Apparently the only issue I think worth addressing, and I'll stand corrected obviously if I'm wrong, is whether or not Mr. Fajardo has the ability, and this court has jurisdiction, to determine whether or not the ultimate sentence of 15 months that he received is reviewable on appeal. And I don't have a lot to say on that issue other than I have reviewed the Cantrell case from this circuit. And as the court is aware, Mr. Fajardo is not challenging the application of the United States Sentencing Guidelines. He's challenging the ultimate sentence of 15 months, and it's his position that that sentence was substantively unreasonable on the basis for that claim, obviously as set forth in my brief, is that the district court didn't properly consider the statutory factors set forth in 3553 as the probation office did when the probation office recommended the 10-month sentence. To not provide an appellant like Mr. Fajardo the opportunity to appeal the ultimate sentence on a reasonableness ground elevates the United States Sentencing Guidelines from their now current advisory status back to mandatory, because... Well, sort of. You know, before that Sentencing Reform Act was passed that gave us the guidelines, you couldn't appeal any sentences to us, basically. Essentially, you couldn't appeal, period. And I appreciate that. I do think that the government's position, and I would like to make one statement, I'm not suggesting, and Mr. Fajardo is not suggesting, that the district court's refusal to depart downward under a traditional guideline analysis for his post-offense rehabilitation is reviewable. But as I argued at sentencing, as I stated in the appeal and in my sentencing papers, his post-offense rehabilitation and the actual versus intended loss analysis both apply to the sentencing factors set forth in 3553A. So if the sentencing guidelines are, as the government suggests, the stopping point for a reviewing court's review the calculation of the sentencing guidelines, then the standard of reasonableness becomes almost irrelevant, because then the only conclusion can be that the United States Sentencing Guidelines, albeit advisory, are reasonable, and to preclude appellate review of the reasonableness of the ultimate sentence, not the guideline sentence, but the ultimate sentence, makes the United States Sentencing Guidelines de facto mandatory again. And this is where ---- Well, if you just said that they are a reasonable site within the whole constellation of reasonableness, it wouldn't really be mandatory, would it? I mean, the judge might pick them and might not, but if he does, you say, well, they're within the bounds of reasonableness. But, of course, we wouldn't even get there under the theory we don't have jurisdiction, right? That's correct. And there has to be a situation where the United States ---- I anticipate being here in two years on another case, but there has to be a situation where a traditional, possibly unassailable application of the sentencing guidelines, when compared with the statutory factors in 3553 and the sentencing mandate of 3553, has to be a situation where a sentence, which is not individualized, but, in fact, is just a straight guideline sentence, would create a situation where there could be an unreasonable sentence. And if this Court lacks jurisdiction to review that sentence, then the guidelines have become de facto mandatory again. You know the difficulty, I think, with the argument, and I'm not suggesting that I've decided, but there's a range of sentencing, and there are reasons that a judge picks A, B, C, and he doesn't ---- he says, we require that he tell us, but no judge tells you every one, and reviewing is very difficult. When we haven't seen him, we know ---- we've seen it, we quite often have seen the probation report or whatever that comes with it, so we get some additional background, but they're just things that a court on appeal can't know unless it's sharply out of line. So when we talk about reasonableness, you know, it may not appear reasonable to us, but it did to the person who had all the facts and the parties and the lawyers and heard all the arguments. It's a difficult thing, don't you think? I agree. It is a very difficult thing. I do see a situation where the law right now doesn't require the district court judge to state emphatically or specifically his or her reasoning on the 3553 factors with respect to imposing the ultimate sentence. Ironically, with respect to the application of the sentencing guidelines, the advisory sentencing guidelines, the district court judge is required to explain his or her application of the sentencing guidelines, and the parties are offered the opportunity at pre-sentencing to contest that application. Again, a reasonableness standard is extremely amorphous, but if the 3553 factors are to have any type of weight with respect to the ultimate sentence, and if they are factors that are to be considered in conjunction with the advisory sentencing guidelines, the district court, it seems the district court would have to give a much more specific delineation of how it considered these 3553 factors, and then whether or not the sentence is reasonable is the issue to be determined on whether or not the sentence is legal. I think we have your argument in hand. Do you want to save some time for a bottle? I do. Thank you. All right. We'll hear from the governor. Good morning, Your Honors. May it please the Court. My name is Wen Huang. I represent the United States of America. In this case, a number of issues are brought up. Initially, with respect to whether or not the district court judge properly considered the guidelines, and also properly considered 3553. We, of course, believe that the district court did properly do that. First off, start out at the correct starting point, which is to determine the correct guidelines range, and subsequently, it did consider the 3553A factors. A recent case that just came out of the Ninth Circuit, United States v. Tony Mix, indicated that the judge need not recite every single 3553A factor and go through it in detail. We believe that, in this case, it's consistent with Mix, and in a sense, the judge, both on the record and in the sentencing memorandum, stated its reasons for applying the sentence, but it did. Mix isn't final yet, though. Excuse me? Mix is not final yet. Yes, Your Honor, that's correct. Not that it's not binding on us at the present time, but it's just more or less for your information. Yes, Your Honor, I believe it's correct. And on to the next issue, which is, of course, not final yet, but the jurisdiction of the court to examine whether or not sentences imposed within the guideline range are reasonable. We, of course, believe that the court does not have jurisdiction. We believe that Booker excised two portions of the SRA, but left the remainder intact, and the court specifically stated that it was a surgical excision, that it intended to leave the remainder of the SRA intact. It was a rather messy surgery. What in the world did it mean, then, when it said that we would review for reasonableness? We believe that with regard to reasonableness, we believe that it would be reviewed for reasonableness if there's something that goes above the guidelines. If it's within the guidelines or below the guidelines, it's the same statutory framework that existed prior to Booker. It wouldn't be reviewed for reasonableness. Where did the court say that? The court just said the guidelines are giving us all kinds of numbers, the district judge will apply all these factors, and the court of appeals will review for reasonableness. It didn't say reasonableness only in case of a departure. It said reasonableness. I agree, Your Honor. I think the Supreme Court did not specifically contemplate this instance, but it did specifically say that these are the only portions of the SRA that we were – that they were excising out of the statute. The remainder remained intact, and our position is the remainder, most of this, as Your Honor had stated, was the pre-Booker regime. Has any court bought that yet in the country? Have any of the courts of appeals bought that argument yet? Your Honor, the difficult part is – the trend is that a number of circuits have not bought that, that they are concluding that a sentence that is unreasonable is a violation of law. We, of course, don't agree with that. We believe that this – Judge Fernandez's question was, is there anybody who's bought that – any circuit that has bought that argument of the government's yet? We had – at this point in time, it's a very – very much an evolving law. I am not aware of any other circuit that has bought that. Do you think we need an opinion? Yes, Your Honor. I believe that we do need an opinion in this case, especially in this – this circuit. This circuit is different from other circuits in a sense that in – What do you mean? Definitely better. And in Reed and in Vences, basically this circuit had stated that a sentence within the guidelines range is not a violation of law. I mean, we have concrete cases stating that. I think in other cases they had amorphous precedent that wasn't as clear-cut as our circuit. And our circuit was very clear before, and Booker, even though it didn't go into the minutia of this aspect of sentencing, they did state that their intent was to keep the majority of the statute intact and simply excise the portions that they excised. And they, again, repeated over and over and over the specific portions that were excised. Well, this case presents a little variation, but we do have some – we have certain rules set forth in our general orders on what cases have priority on questions. And there are some in the pipeline that will probably affect this. So we may end up deferring until those cases are decided and then seeing what's left. And if there's – if we're first in line, then certainly opinion's probably warranted on this. But we may have to defer to those cases. I understand that there's – I'm just saying that for your information's sake. Yes, Ron. I understand the supplemental briefing has already been ordered in PLOF. Yes. And, of course, this is a rapidly evolving and continually evolving subject. I'm not sure – I'm not sure PLOF will entirely answer the question in this case. Do you think so or not? I don't think any one single case can entirely answer the – all the issues that are brought up by these post-Booker appeals. On to the topic whether or not this makes it de facto mandatory, if there's no jurisdiction, I don't believe that it does. I believe that the court still has discretion to sentence within and without – outside of the sentencing guideline range. And so, in effect, I don't believe it makes it de facto mandatory. It simply gives some sort of a good measuring stick. I mean, in terms of practice, we need a measuring stick out there to determine what is reasonable and what isn't. And we certainly pragmatically can't have every single case be appealed and have the Ninth Circuit second-guess every sentence that's applied in every case that's appealed. Why not? Yes, Your Honor. Why not? Why not? It's just – Most other – all other cases in the world are appealed and we second-guess them. Maybe we shouldn't, but that's supposed to be our job. So, what's so special about the sentencing? Well, first, Your Honor, the sheer volume. How about immigration cases? There's probably a bigger volume than criminal appeals. Should we decide we don't have jurisdiction over them? And secondly, Your Honor, the second aspect is – Congress might decide it for us. The second aspect is that, again, Your Honor had stated that it's very difficult to be there at the trial stage. Sure, but you're just arguing policy now. I mean, that's – it may well have been district court judges preferred the earlier regime where there were no rules and no appeals. But Congress and its wisdom changed all that. We've been reviewing them faithfully and we're trying to parse out where somebody is a minor or minimal participant based on the record. You know, that's – so a volume doesn't frighten us. Well, and it's a good thing because there was discrepancy and it did vary on factors that should not have been taken into consideration. The population numbers, the general population and population in prison were very disproportionate in some parts of the country for some people. So we needed something. The judges needed something. And they got it. But how well it works is the question. And we have to do it. We have to look and see. Well, Your Honor brings up a good point, which is conformity and conformity with respect to all the states in this union, in that we need some sort of measuring stick. Again, you've seen in our alternative argument that if we don't get a holding that says the court doesn't have jurisdiction, that we would like something, some sort of presumption of reasonableness, some sort of measuring stick so that we, working the cases, can be guided by it. And secondly, so that there is conformity across a number of different cases. Well, golly, if you have the judge of the Ninth Circuit Court of Appeals deciding those issues, you're more likely to have uniformity because there are many fewer of us than there are district judges. So you'll get a wonderful, a much better measuring stick. Your Honor, basically, I believe that, again, there's a measuring stick, but it's each panel, each individual who makes that decision. I'm surprised at the government's argument, I must say, because, you know, you've testified, representatives of the Department of Justice have testified recently in front of Congress, expressing their great dismay that district judges are imposing less rigorous sentences in their views under the advisory guidelines. And they're very upset about this. You'd think you'd be wanting appellate review of all this unreasonable activity that's happening down in the district courts. Because we speak as one, even though we sit in panels. We decided this is the last time you're coming when there are just two cases to be audited. I admit, Your Honor, it's a very difficult issue. But, again, part of the role of the Ninth Circuit and the appellate courts is to basically give guidance and guidance that the folks can rely upon, both in cases that don't make it to appeal. We should have jurisdiction to do just exactly what you requested. No, Your Honor, I believe that I've made the argument that this is the alternative argument. No, we understand. Thank you very much. Thank you. Well, Your Honors, if there's no further questions, we would submit. Thank you. I have no rebuttal. Thank you very much for your arguments. Thank you. The case will be taken under advisement, and we will let you know if we're going to defer it pending your decision to approve our other matters.
judges: Farris, Fernandez, Thomas